■ In the Matter of OMAVI A. and Another, Children Alleged to be Neglected. BROOME COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JAIMYCE A., Appellant, et al., Respondent. (Proceeding No. 1.) In the Matter of BARSUN GG., Respondent, v JAIMYCE A., Appellant. (Proceeding No. 2.) [891 NYS2d 525]—

Mercure, J.P.

Petitioner Barsun GG. (hereinafter the father) and respondent Jaimyce A. (hereinafter the mother) are the parents of Omavi A. (born in 2002). In June 2007, petitioner Broome County Department of Social Services (hereinafter DSS) commenced proceeding No. 1 by filing a neglect petition against the mother and her paramour. DSS alleged, among other things, that the child had been subjected to excessive corporal punishment by the paramour and that the mother had not protected the child from such punishment. The father then commenced proceeding No. 2 against the mother, seeking custody of the child, and obtained temporary custody during the pendency of both matters. As is relevant here, Family Court found in proceeding No. 1 that the mother had neglected the child. The court then conducted a combined dispositional and custody hearing, following which it ordered that the mother successfully complete a parenting class. In a separate order, Family Court awarded the father physical custody of the child. The mother appeals from both the dispositional order in proceeding No. 1 and the custody order in proceeding No. 2.*

Contrary to the mother's arguments on appeal, Family Court's finding of neglect in proceeding No. 1 was supported by a preponderance of the evidence (see Family Ct Act § 1046 [b] [i]; *Matter of Mary Kate VV.*, 59 AD3d 873, 875 [2009], *lv denied* 12 NY3d 711 [2009]). In this case, the mother's paramour—who the mother knew had a violent criminal background—struck the child repeatedly with a belt, causing marks on his face and body that were readily visible several days later. The mother was aware of the incident but minimized its impact and, indeed, spanked the child herself shortly after it occurred and continued to allow her paramour to watch the child alone. While the mother disputed the frequency with which she used corporal punishment and denied that the paramour had ever disciplined the child before, "even a single incident of excessive corporal punishment can be sufficient to constitute child neglect" (*Mat-*

---

* The mother's notice of appeal in proceeding No. 1 inaccurately lists the date of entry of a dispositional order dealing with her paramour rather than that dealing with her. Given the lack of any confusion, however, we will treat her notice of appeal as valid in the interest of justice (*see* CPLR 5520 [c]; *Matter of Simeon F.*, 58 AD3d 1081, 1081 n [2009], *lv denied* 12 NY3d 709 [2009]).

*ter of Aaliyah Q.*, 55 AD3d 969, 970 [2008]). According due deference to Family Court's resolution of credibility issues, sufficient evidence in the record supports its determination that the mother neglected the child (*see Matter of Chelsea BB.*, 34 AD3d 1085, 1087 [2006], *lv denied* 8 NY3d 806 [2007]; *Matter of Justin O.*, 28 AD3d 877, 878-879 [2006]).

Turning to proceeding No. 2, while there is some confusion as to what prior order embodied the parties' custodial arrangement, the neglect cited above, as well as a previous substantiated claim of neglect, constituted a substantial change in circumstances that permitted Family Court to revisit that arrangement (*see Matter of Jeremy J.A. v Carley A.*, 48 AD3d 1035, 1036 [2008]; *Matter of Hagans v Harden*, 12 AD3d 972, 973 [2004], *lv denied* 4 NY3d 705 [2005]). The question thus became what custodial arrangement would be in the child's best interests, which requires the consideration of a number of factors, including the need to maintain stability in the child's life, the child's wishes and the quality of the home environment, as well as each parent's relative fitness, willingness to foster a relationship with the other parent and ability to further the child's emotional and intellectual development (*see Matter of Omahen v Omahen*, 64 AD3d 975, 976 [2009]; *Matter of Miller v Murray*, 61 AD3d 1295, 1296 [2009]).

Here, the record establishes that the father is capable of providing the child with greater stability, has taken an active interest in his social and intellectual development and will promote his relationships with other family members, including his mother and maternal grandmother. Moreover, although concerns exist as to the father's previous level of involvement with the child and the amount of time he can devote to the child's upbringing, the father and the child have formed an appropriate bond and the child will benefit from the active involvement of the father's extended family. In contrast, the mother abruptly moved to Ohio during the pendency of these proceedings—an area where she has no family—and has twice been found to have neglected the child. She also frankly admitted that she would not encourage the child to see the father and would not assist in facilitating that visitation, if she had custody. Taking into account Family Court's opportunity to evaluate the credibility of the witnesses, we conclude that a sound and substantial basis in the record exists to support its custodial determination, and accordingly affirm (*see Matter of Burola v Meek*, 64 AD3d 962, 965-966 [2009]).

We have reviewed the mother's remaining contentions and find them to be without merit.

Spain, Rose, Kane and Garry, JJ., concur. Ordered that the orders are affirmed, without costs.