Matter of Schiffer v Charming Shoppes of Del. (2020 NY Slip Op 02346)





Matter of Schiffer v Charming Shoppes of Del.


2020 NY Slip Op 02346


Decided on April 23, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 23, 2020

529649

[*1]In the Matter of the Claim of Sheila Schiffer, Claimant,
v
Charming Shoppes of Delaware et al., Appellants, and Special Disability Fund, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: February 20, 2020

Before: Clark, J.P., Mulvey, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Gitto & Niefer, LLP, Binghamton (Jason M. Carlton of counsel), for appellants.
Special Funds Group, Schenectady (Kevin J. Rumsey of counsel), for Special Disability Fund, respondent.



Clark, J.P.
Appeal from a decision of the Workers' Compensation Board, filed February 7, 2019, which discharged the Special Disability Fund from liability under Workers' Compensation Law § 15 (8).
Claimant suffered a work-related injury to her back in 2000, underwent corrective surgery in 2001 and was ultimately classified with a permanent partial disability and awarded workers' compensation benefits. In March 2007, claimant sustained another work-related injury to her back and her workers' compensation claim was thereafter established for a compensable back injury. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) timely filed a C-250 form and, later, an amended C-250 form with the Workers' Compensation Board seeking reimbursement from the Special Disability Fund pursuant to Workers' Compensation Law § 15 (8) (d).
At a February 2017 hearing before a Workers' Compensation Law Judge (hereinafter WCLJ), the carrier alleged that the Fund had stipulated — in a 2009 pretrial conference worksheet — that Workers' Compensation Law § 15 (8) (d) was applicable. The Fund disagreed, arguing, among other things, that any such stipulation was untimely and unenforceable (see Workers' Compensation Law § 15 [8] [h] [2] [A]). Following a March 2017 hearing, the WCLJ determined that, notwithstanding the stipulation, the carrier had timely submitted sufficient evidence to establish its entitlement to reimbursement. The Fund filed an application for review by the Board. The Board modified the WCLJ's decision, finding that the stipulation was untimely and not legally binding and that the carrier had failed to submit sufficient timely evidence in support of its claim for reimbursement under Workers' Compensation Law § 15 (8) (d). As a result, the Board directed that the Fund be discharged and removed from notice. The carrier appeals.
The carrier argues that the evidence it submitted, together with certain concessions purportedly made by the Fund at the March 2017 hearing, was sufficient to establish its entitlement to reimbursement under Workers' Compensation Law § 15 (8) (d). To establish entitlement to reimbursement from the Fund, the carrier must demonstrate that the claimant had a preexisting permanent impairment that hindered job potential, a subsequent work-related injury, and "a permanent disability caused by both conditions that is materially and substantially greater than that which would have resulted from the subsequent injury . . . alone" (Workers' Compensation Law § 15 [8] [b], [d]; see Matter of Southard v Corning Hotel Corp., 95 AD3d 1519, 1520 [2012]). In determining if a preexisting permanent impairment hindered job potential, the dispositive question is whether the preexisting condition would be a hindrance to the claimant's general employability, not whether it was an obstacle or handicap to the claimant's particular employment (see Matter of Gramza v Buffalo Bd. of Educ., 148 AD3d 1485, 1486 [2017]; Matter of Zeppieri v Hofstra Univ., 94 AD3d 1288, 1289 [2012]). Additionally, as relevant here, a permanent disability may be shown to be materially and substantially greater than that which would have resulted from the later work-related injury alone where the preexisting condition involves a loss of function for which the body was able to partially compensate, but is no longer able to after the subsequent injury, or "where the pre-existing condition renders the employee vulnerable or more vulnerable to the work-related accident than would be an unhandicapped employee" (Matter of Saletta v Allegheny Ludlum Steel Corp., 62 AD2d 360, 363 [1978], lv denied 45 NY2d 711 [1978]).[FN1]
There is no dispute that claimant had a preexisting impairment stemming from her 2000 work-related injury or that she suffered a subsequent work-related injury in 2007. The Board, however, determined that the carrier failed to submit sufficient, timely evidence to establish that claimant's preexisting permanent impairment hindered her general employability and that claimant had a permanent disability that was materially and substantially greater than it would have been absent the prior work-related injury.[FN2] In so determining, the Board stated that the only timely, supporting medical evidence on those points was a June 2009 independent medical examination report by an orthopedic surgeon, who did not discuss whether or how claimant's preexisting permanent impairment would be a hindrance to her general employability, but did opine that claimant had "a disability caused by both conditions that is materially and substantially greater than that which would have resulted from the subsequent injury alone." The Board appears to have overlooked relevant medical evidence on the issue of whether claimant's 2001 permanent impairment would be a hindrance to her employability — specifically, 2001 postsurgical medical records advising claimant "to find a job that does not involve excessive lifting" and repetitive bending and twisting and indicating that she was subject to a 30-pound lifting restriction. Even assuming that such overlooked medical evidence is sufficient to establish the hindrance requirement (see generally Matter of Torres v Kaufman's Bakery, 100 AD3d 1140, 1140-1141 [2012]), we agree with the Board that the orthopedic surgeon's statement as to the materially and substantially greater nature of claimant's present disability was, without further explanation, too conclusory to satisfy that requirement (see Matter of Durham v Wal-Mart Stores, Inc., 174 AD3d 1273, 1276 [2019]; Matter of Gramza v Buffalo Bd. of Educ., 148 AD3d at 1486-1487; Matter of Estate of Hertz v Gannett Rochester Newspapers, 272 AD2d 814, 814 [2000]). Accordingly, we find that substantial evidence supports the Board's determination that the carrier failed to establish its entitlement to reimbursement under Workers' Compensation Law § 15 (8) (d) (see Matter of Gramza v Buffalo Bd. of Educ., 148 AD3d at 1487).
The carrier alternatively argues that the Fund should be estopped from opposing the applicability of Workers' Compensation Law § 15 (8) (d) because it relied, to its detriment, on the Fund's 2009 pretrial conference statement that Workers' Compensation Law § 15 (8) (d) did in fact apply. However, any such reliance was unreasonable given that the carrier did not timely take the requisite steps to ensure that the Fund's pretrial conference statement would be legally binding (see Workers' Compensation Law §§ 15 [8] [h] [2] [A]; 32; Matter of Durham v Wal-Mart Stores, Inc., 174 AD3d at 1274-1275; 12 NYCRR 300.5 [b]). To the extent that we have not addressed any of the carrier's remaining arguments, they have been reviewed and found to be without merit.
Mulvey, Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The carrier concedes on appeal that the third way in which a permanent disability may be shown to be materially and substantially greater than would have resulted from the later work-related injury alone — namely, that the preexisting disability caused the work-related injury — is inapplicable (see Matter of Saletta v Allegheny Ludlum Steel Corp., 62 AD2d at 364).

Footnote 2: We do not interpret the Fund's statements at the March 2017 hearing to be, as the carrier maintains, concessions that claimant's preexisting permanent impairment hindered her general employability or that her permanent disability was materially and substantially greater than that which would have resulted solely from her 2007 work-related injury.